# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### MIDDLE DISTRICT—HARRISBURG, 1873.

---

## Pennsylvania Railroad Co. *versus* Beale.

1. The approach by a public road crossing a railroad was particularly dangerous, because the railroad from natural and other obstructions could not be seen nor the whistle heard. The deceased in approaching the railroad did not stop to listen, &c.; in crossing the railroad he was killed by the locomotive. *Held*, that the deceased was guilty of negligence and his family could not recover damages for his death.

2. The duty of the traveller to stop is more obligatory when an approaching train cannot be seen, &c., than when it can.

3. If the traveller cannot see the track by *looking* out from his carriage, he should get out and lead his horse.

4. The failure to stop immediately before crossing a railroad track is negligence *per se*, and this is for the court. The rule is unbending.

5. Hanover R. R. *v.* Coyle, 5 P. F. Smith 396; N. Penna. R. R. *v.* Heileman, 13 Wright 60, approved.

May 24th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Juniata county:* No. 22, to May Term 1873.

This was an action on the case brought to December Term 1871, by Elizabeth Beale, widow and others, children of Thomas Beale, deceased. It was to recover damages for the death of Thomas Beale, occasioned as the plaintiffs alleged, by the negligence of the defendants.

The cause was tried September 3d 1872, before Bucher, P. J., of the Twentieth District.

On the 2d of September 1871, the deceased was driving with

his son in a "spring wagon," near the borough of Patterson, in Juniata county; the road on which he was travelling crossed the Pennsylvania Railroad at right angles at the east end of the borough; in passing over the railroad, the carriage of the deceased was struck by the locomotive engine of the fast line going east, and he was killed.

The single question considered in the Supreme Court, was as to the concurrent negligence of the deceased.

James Beale, son of the deceased, testified: "We left home early, in a spring-wagon. I drove. We came down the hill on a very slow walk, so that we could hear if any trains were coming. When we came to opposite the cave we stopped almost a dead stop. We both listened, and we could hear no train. Father told me to go on. We went on, and could see nothing until we got on to the track that the train was to go down on. Just as we got on the track we both looked up and saw the train. He told me to hit the horse a cut quick and go on. Just as I raised the whip the train struck the wagon, and that is the last I remember. Could not see up the road on account of the trains and the fog. There is a turn just above the cave. The hill is just above the cave. I did not measure from the cave to railroad. We did not stop entirely. Neither of us got out and went to the railroad. I was driving. The hill obstructs the view from the cave, so we could not see the railroad except right straight before us. The first time after we left the cave and looked up the track, was right when we were on the track and train was coming. Then I was alarmed and did not see much else. We did not drive from cave to the track on a trot. When he saw the cars he told me to give the horse a cut. I did so, and the horse jumped forward on the track. Just then the train struck, and that is all I know. Could not see up the track till I got on it."

George W. Jacobs testified: "Am acquainted with the crossing. In approaching it from the west we first come in sight of it seventy yards from south siding. From this point can see only a few steps up the road above crossing—that is, when the track is clear. At thirty-five yards from rail on south siding can see about seven yards above crossing, except through a small opening between the high bank extending along railroad and the watch-box. Through this can see fifteen yards above crossing. At sixteen yards from same track can see ten yards above crossing, past south end of watch-box, and twenty yards up through the opening before mentioned. At ten yards from south crossing can see up the track eighteen yards on down track, and about eighteen yards to the small aperture at watch-box. At seven yards from same crossing can see above crossing twenty-eight yards on east track. At three yards from same track cannot see up to the curve at upper end of Patterson on account of wood-shed covering the view. Wood-shed now re-

moved.   Can't say how far I could see up from three yards point.
From the crossing on railroad I could see up to curve—about five
hundred yards.   If cars are on south siding you would have to
pass it to see up the track.   I have tested that.   I measured dis-
tance from crossing to tool-house; it is fourteen hundred feet.
Standing in the road near the cave, nothing can be seen but the
hill.   There is a space of about ten feet from foot of bluff between
it and watch-box.   I could not see up through that space west
along the track if there was a train on the south siding, unless I
could see between the cars.   I am not prepared to say whether, if
sitting in open wagon on this open space and looking west towards
the Patterson House, I could see stack of locomotive coming east.
I don't think I ever did stand on level ground between track and
bluff and look west to see cars coming."

There was evidence in the case bearing on the questions of
negligence by the deceased and by the defendants; what has been
given, with the charge of the court below and the opinion of the
Supreme Court, will sufficiently present the case.

The plaintiffs' second point which was affirmed, was :—

" It is not the duty of one lawfully attempting to cross a rail-
road to stop and look both ways and listen for approaching trains,
where, by reason of the nature of the ground and permanent or
temporary obstructions and noises by the railroad company, the
approach of trains to the crossing could not be discovered in time
to avoid danger by stopping, looking and listening."

The defendants' points which were denied, were :—

1. Before there can be a recovery in this case, the plaintiffs
must show that Thomas Beale stopped before he reached the track
and looked along the same and saw no approaching train; and,
as there is no evidence whatever to sustain a finding that he so
stopped, it is in law negligence on his part, and the verdict must
be for the defendant.

2. As the uncontradicted evidence in the case shows that Beale
did not stop before driving on the track, the verdict must be for
the defendant.

3. Beale was bound, as every man crossing a railroad, in ordinary
prudence, is bound, to look in all directions in which trains may
approach, and to pause until he found he could cross with safety;
and, as the evidence here shows he did not do so, there can be no
recovery, and the court is requested to give binding instruction to
that effect to the jury.

4. Upon the whole evidence of this cause the law of the case is
with the defendant, and the plaintiffs cannot recover.

Judge Bucher having spoken of the evidence and law as bearing
upon the question of the defendants' negligence, said :—

" The second question, then, is, was the deceased guilty of any
negligence or carelessness that in any manner contributed to his

death ?   If he was, there is an end of the case, and the plaintiffs cannot recover; for then he was not injured by the defendant, but the accident would be laid to the door of the deceased, and would be his own misfortune or fault.   The duty of a traveller, in passing along a public road or highway where the same crosses or intersects a railroad, has been declared by the Supreme Court in numerous decisions.   It has been held that it is the duty of one lawfully attempting to cross a railroad, to stop and look both ways, and listen for approaching trains, before he ventures upon the track, and that the omission to do this is negligence.   Did the deceased do that in this case ?   The only evidence in the cause bearing upon this point, as to how the deceased approached the crossing, that I remember of, is the evidence of James Beale, the boy who was with the deceased at the time of the accident.   He testified as follows :— * * *

"From this evidence it is manifest, that deceased did not come to a full or complete stop, and, although he listened for the approach of cars whilst he was slowly going in the direction of the crossing, yet he did not look for any approaching train, save immediately in front and in the direction he was travelling.   You will remember, the proof is, there was a high bluff or hill that intercepted or shut out the view of the cars in approaching the crossing from the west, at the cave, the point where the deceased slackened the pace of his horse and listened.   This point was about seventy-five feet from the track.   It is manifest, that if deceased had looked from this point for a train approaching the crossing, that it would have done him no good, for the bluff or hill obscured it from view.   Whilst the law is fixed and settled, that it is the duty of the traveller, in crossing a railroad along a highway, to stop, look and listen before he goes upon the track, yet we do not understand the rule to be of such universal application as to control a case where stopping, listening and looking would have been in vain.   The law does not demand vain and impossible things.   Cases of this kind must necessarily rest upon the peculiar facts and circumstances.   If you are satisfied, from the evidence, that there was any point along the public road upon which deceased was travelling, before he struck the railroad, from which he could have seen or heard the approach of this train, if he had stopped, looked and listened, we instruct you that it was his imperative duty to do so, and if he did not so stop, look and listen, there can be no recovery.   On this branch of the case, then, to wit, the negligence of the deceased, we submit to you this question : Was there any point along the highway, upon which deceased was travelling, from which, if he had stopped, looked and listened, he might have heard or seen the approach of the train.   If there was, there is an end of the case, and plaintiffs cannot recover ; for it was the manifest duty of the deceased to stop, look and listen

[Pennsylvania Railroad Co. *v.* Beale.]

before he went upon the track, if the ground and situation of the place allowed him to do so.   The evidence is uncontradicted, that there was a level space of ground, about ten feet wide, between the hill or bluff and the first track or siding, on the approach to the track from the valley, upon which deceased was travelling.   It was the plain duty of the deceased to have stopped there, and to have looked and listened for the approach of the train, if you find, from the evidence, that the approach of the train might have been seen or heard from there.   Now, how is this ?   Plaintiffs contend that deceased could not have seen or heard the train from this point, if he had stopped, looked and listened.   This the defendant denies.   The plaintiffs have called witnesses who have described the situation on the morning of the accident, and who state that the train could not have been seen or heard from this point, and the defendant has called witnesses to prove the opposite.   You will bear in mind all the evidence upon this point upon the one side and the other—that of Mr. Jacobs and others for plaintiffs, and Mr. Black and others for defendant.   Are you satisfied, from all the evidence in the cause, that the deceased, in approaching the crossing, acted as a prudent and careful man would have done under all the circumstances ?   It is conceded that the crossing was a dangerous one.   The effect of this was to *quicken* the diligence of both parties to avoid doing injury to each other.   If you find that deceased did all a prudent, careful man could do, under all the circumstances, to inform himself of the whereabouts of the train before going upon the track, then he would not be guilty of negligence in going upon the same, and your verdict should be for the plaintiffs, provided you find the defendant was guilty of negligence." * * *

The verdict was for the plaintiffs for $1000.

The defendants sued out a writ of error.   They assigned for error the denial of their points, the affirmance of the plaintiffs' second point and the charge of the court.

*L. W. Hall* (with whom was *E. J. Doty*), for plaintiffs in error.—A traveller crossing a railroad must stop and look up and down, because the presumption is that a train may be approaching : Penna. Canal Co. *v.* Bentley, 16 P. F. Smith 30.   Where, as in this case, the negligence of the deceased is clear, the court should so determine as matter of law : Pittsburg & C. R. R. *v.* McClurg, 6 P. F. Smith 294 ; West Chester & Ph. R. R. *v.* McElwee, 17 Id. 311 ; Catawissa R. R. *v.* Armstrong, 2 Id. 286 ; Pennsa. R. R. *v.* Ogier, 11 Casey 71.   Not looking for a train is an entire failure of performance of duty : Penna. R. R. *v.* Heileman, 13 Wright 64 ; Hanover R. R. *v.* Coyle, 5 P. F. Smith 396 ; Reeves *v.* Del., L. & W. R. R., 6 Casey 464.

*J. W. Parker* and *E. D. Parker*, for defendants in error.—The obstructions to vision and hearing being such as that the stopping of the deceased would have been of no avail, there was no obligation on him to do so ; the question of negligence was for the jury : Philada. & Trenton R. R. Co. v. Hagan, 11 Wright 244 ; Hanover R. R. Co. v. Coyle, 5 P. F. Smith 396 ; Pa. R. R. Co. v. Goodman, 12 Id. 329 ; West Chester & Philada. R. R. Co. v. McElwee, 17 Id. 311.

The opinion of the court was delivered, July 2d 1873, by

Sharswood, J.—The evidence of the plaintiffs below showed a clear case of contributory negligence in the deceased. The crossing at which he met with the injury which resulted in his death, was a dangerous one, and as he was well acquainted with it, there was the greater reason that he should exercise the utmost care and caution, by stopping at the railroad before undertaking to pass over. It is very clear that if he had done so but for a few minutes the accident would not have happened. "This evidence," said the learned judge in his charge, "is uncontradicted, that there was a level piece of ground, about ten feet wide, between the hill or bluff and the first track or siding on the approach to the track from the valley upon which the deceased was travelling." It was his plain duty to have stopped at that place, and so the learned judge instructed the jury, but he qualified this instruction by adding, "if you find from the evidence that the approach of the train might have been seen or heard from there." This in fact left the question of negligence to the jury, upon a point not material. Indeed, the duty of stopping is more manifest when an approaching train cannot be seen or heard than where it can. If the view of a track is unobstructed, and no train is near or heard approaching, it might, perhaps, be asked, why stop ? In such a case there is no danger of collision—none takes place—and the sooner the traveller is across the track the better. But the fact of collision shows the necessity there was of stopping ; and therefore in every case of collision the rule must be an unbending one. If the traveller cannot see the track by looking out, whether from fog or other cause, he should get out, and if necessary lead his horse and wagon. A prudent and careful man would always do this at such a place. In The Hanover Railroad Co. v. Coyle, 5 P. F. Smith 396, the plaintiff, a pedlar, in the depth of winter, was driving inside of his covered wagon, with his head muffled up in a thick overcoat, and it appeared that a traveller passing in the direction he was going could not see up and down the track until within sixteen feet of it. Yet these circumstances were not allowed to form any excuse for his negligence in omitting to stop. There never was a more important principle settled than that the fact of the failure to stop immediately before crossing a railroad

[Pennsylvania Railroad Co. *v.* Beale.]

track, is not merely evidence of negligence for the jury, but negligence *per se,* and a question for the court : North Pennsylvania Railroad Co. *v.* Heileman, 13 Wright 60.   It was important not so much to railroad companies as to the travelling public.   Collisions of this character have often resulted in the loss of hundreds of valuable lives, of passengers on trains, and they will do so again, if travellers crossing railroads are not taught their simple duty, not to themselves only but to others.   The error of submitting the question to the jury whether if the deceased had stopped, he could have seen or heard the approaching train, runs through the entire charge and answers of the learned judge below. He should upon the uncontradicted evidence have directed a verdict for the defendants.

Judgment reversed.

WILLIAMS and MERCUR, JJ., dissented.