# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

Siever *v.* Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, Appellant.

*Negligence—Railroads—Crossings—Collision of street car and locomotive—Concurring negligence—"Stop, look and listen"—Fellow servant rule—Contributory negligence—Case for jury.*

1. An innocent person cannot be deprived of his remedy for personal injuries, because they resulted from the concurrent negligence of two others, one of whom was a fellow workman of the plaintiff.

2. When a driver stops at a place where he cannot get a good view of the railroad he is about to cross from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such a view, and his failure so to do constitutes contributory negligence in law, for stopping where an approaching train cannot be seen is not an observance of the duty to stop, look and listen, but when he comes to a standstill at a usual stopping place, where he can get some view of the tracks, whether he should go forward to a better place to look is a question for the jury to determine.

3. While open safety gates do not relieve one about to cross a railroad from the duty of exercising due care, yet the lifting of the gates is an intimation that no train is approaching and an invitation to make the crossing, and where gates are open at a time when a train is approaching, it is not only evidence of negligence on the part of the railroad company, but is a fact for the consideration of the jury in determining whether the injured plaintiff exercised proper care according to the circumstances.

4. In an action against a railroad company to recover damages

for injuries sustained by a motorman in a collision between a
street car and a locomotive, it appeared that plaintiff had brought
his car to a standstill at a point ten feet distant from defendant's
safety gates, which was the usual place for stopping before cross-
ing; that plaintiff could see to the west about seventy feet along
the tracks, that the safety gates were raised and the conductor of
the street car, who was standing in the middle of the tracks sig-
nalled plaintiff to cross, that just before crossing the second track
plaintiff saw a train fifty feet away approaching from the west,
that he was afraid to reverse the motor because the rails were
frosty, and put on more power and continued across, when the
rear of the car was struck by the train whereby the injuries com-
plained of were occasioned. Defendant contended that the negli-
gence of the conductor in signalling plaintiff to cross, not the im-
proper raising of the safety gates, was the cause of the accident,
and that plaintiff was guilty of contributory negligence in failing
to stop, look and listen immediately before crossing. *Held*, the
case was for the jury and a verdict for the plaintiff was sus-
tained.

Argued Oct. 18, 1915. Appeal, No. 169, Oct. T., 1915,
by defendant, from judgment of C. P. Allegheny Co.,
Jan. T., 1914, No. 2268, on verdict for plaintiff, in case
of Frank Siever v. Pittsburgh, Cincinnati, Chicago and
St. Louis Railway Company. Before MESTREZAT, POT-
TER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries.
Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $10,000.00 and judgment
thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, and the
refusal of the court to direct a verdict for defendant.

*Richard H. Hawkins,* of *Dalzell, Fisher & Hawkins,*
for appellant.—As plaintiff was not in a position from
which he could see the approaching train, it was his duty
to leave his vehicle and go forward to a position from
which he could see: Mankewicz v. Lehigh Valley R. R.

Co., 214 Pa. 386; Kinter v. Penna. R. R. Co., 204 Pa. 497; Penna. R. R. Co. v. Beale, 73 Pa. 504.

The raising of the safety gate by the railroad company's watchman did not lure or invite the plaintiff to go upon the tracks: Ayers v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 201 Pa. 124.

The negligence of the conductor was the negligence of the motorman, and the fellow servant rule applies: Greenwood v. Philadelphia, Wilmington & Balto. R. R. Co., 124 Pa. 572; Dean v. Penna. R. R. Co., 129 Pa. 514; Thompson v. Penna. R. R. Co., 215 Pa. 113; Dunlap v. Philadelphia Rapid Transit Co., 248 Pa. 130; Martus v. Delaware, Lack. & Western R. R. Co., 36 N. Y. Supp. 417; Abbitt v. Lake Erie & Western Ry. Co., 150 Ind. 498; Schron v. Staten Island Electric R. R. Co., 16 N. Y. App. 111.

The elevation of the gates at the crossing was not the proximate cause of the injury: Penna. R. R. Co. v. Kerr, 62 Pa. 353; Penna. R. R. Co. v. Hope, 80 Pa. 373; Hoag & Alger v. Lake Shore & Mich. So. R. R. Co., 85 Pa. 293; Gudfelder v. Pittsbg., Chicago & St. Louis Ry. Co., 207 Pa. 629; Nirdlinger v. American District Telegraph Co., 245 Pa. 453.

*Rody P. Marshall,* for appellee.—The negligence of the conductor could not be imputed to the plaintiff: Harper v. Delaware, Lack. & Western R. R. Co., 22 Hun. App. Div. 273, and cases there cited, and Hobson v. N. Y. Condensed Milk Co., 49 N. Y. Supp. 209; McCormack v. Nassau Electric R. R. Co., 46 N. Y. Supp. 230; Bailey v. Jourdan, 46 N. Y. Supp. 399; Chicago & Alton R. R. Co. v. Harrington, 192 Ill. 1; Pullman Palace Car Co. v. Laack, 143 Ill. 242 (32 N. E. Repr. 285); Waters v. Metropolitan St. Ry. Co., 85 N. Y. Supp. 1120; Mittleman v. Philadelphia Rapid Transit Co., 221 Pa. 485; Duggan v. Balto. & Ohio R. R., 159 Pa. 248; Ainsley v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 243 Pa. 437.

The negligence of defendant's flagman in raising the gates when the train was approaching was the proximate cause of the injury: Wood v. Penna. R. R. Co., 177 Pa. 306.

Whether plaintiff stopped, looked and listened at the best place was for the jury: Arnold v. Philadelphia & Reading R. R. Co., 161 Pa. 1; Ellis v. Lake Shore & Mich. So. R. R. Co., 138 Pa. 506; Whitman v. Penna. R. R., 156 Pa. 175; Messinger v. Penna. R. R. Co., 215 Pa. 497; Bard v. Philadelphia & Reading Ry. Co., 199 Pa. 94

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1916:

On January 31, 1912, the plaintiff was severely injured in a collision between a trolley car, upon which he was acting as motorman, and a locomotive hauling a train on the defendant's railroad. He sued in trespass and recovered a verdict; judgment was entered thereon, and the defendant has appealed.

At the place where the accident happened the railroad consisted of three main tracks, with a siding running from the first of these at a point about 60 or 70 feet to the west of the street crossing. Safety gates were maintained by the defendant company at this crossing, and these were operated from a tower that stood 10 or 12 feet above the level of the street, from which the watchman in charge could see all approaching trains. The street railway company also maintained an appliance to prevent its cars from going over the railroad until a safety switch was turned by the trolley conductor, who usually crossed to the opposite side of the tracks for that purpose; but on the day of the accident this appliance was out of repair and the street railway company had a special man stationed there to manage it. There were four passengers in the trolley car, and the plaintiff was standing in the usual place for motormen, on the front platform, which was entirely enclosed. He brought his

car to a stop within 10 feet of the railroad gates, and
the safety switch was then turned by the man who had
it in charge. At this time the gates were down because
a shifting engine was running over the first railroad
track, for the purpose of getting an empty train that
stood on the before-mentioned siding. After the engine
had passed and was about to enter this side track, the
gates went up and the conductor of the trolley car who
had taken his place in the center of the railroad, sig-
nalled the plaintiff to approach; whereupon the latter
looked to the right and the left, and then started his car,
running it slowly to guard against the possibility of
"jumping" the trolley track. When the fender of the
car was near the first rail of the second track, the plain-
tiff noticed a train 300 feet away approaching thereon
from the west, at about 35 miles an hour. The day was
cold and foggy, and the plaintiff was afraid to reverse
his motor, stating, "In the winter time a rail is frosty,
and it won't take a reverse; so the safest way for me to
do was to go ahead and save what I could—save our-
selves." What he did, however, was to look to the right
and left again, and then put on as much power as he con-
sidered safe, in order to get out of danger as quickly as
possible. When he made the observation just referred to,
the train was about 50 feet away; but before his car
had entirely cleared the last rail of the second track, its
rear end was struck by the locomotive, which had then
slowed down to about 15 miles per hour, and the im-
pact turned the car around to such an extent that its
front platform faced in the direction opposite to that of
the train. The motorman was injured in the collision.

When the plaintiff stopped before the safety gates,
owing to the train on the siding, he could see ahead only
70 feet in the direction from which the locomotive that
subsequently collided with him was then advancing, al-
though there does not appear to have been any sufficient
reason why the conductor should not have observed the
impending danger before he signalled the plaintiff to

make the crossing. This brings us to one of the important points in the case; for the trial judge charged that the negligence of the trolley conductor would not prevent a recovery against the defendant railroad, if the latter "was negligent in a way which contributed to the accident." He said to the jury that a question for them to decide was, "whether or not the raising of the gates was a negligent act which contributed to the plaintiff's injury," and, if it was, then, even though accompanied by "the negligence of the conductor, or any one else, as long as it was not the negligence of the motorman himself," the defendant company would be liable; further, that the negligence of the conductor was "not to be imputed to the motorman, merely because they were working together on the same car." These instructions, and the refusal to give binding directions to find for the defendant, are complained of on this appeal.

It appears that, when the plaintiff approached the railroad, he brought his car to a standstill at the usual stopping place, and that he was careful before actually attempting to cross; in other words, he "stopped, looked and listened." It further appears that he continued to exercise due care while in the act of making the crossing, and there was nothing in the evidence sufficient to show that he either expressly or impliedly constituted the conductor his agent for the purpose of making observations, or especially entrusted his safety to the latter's care; in fact, it does not even appear that it was usual or customary for the conductor to keep a lookout ahead of the car for the approach of trains. No authority in Pennsylvania has been called to our attention which, on its facts, controls the present case; but two cases from other jurisdictions have been cited which are somewhat similar. First, in Harper v. Delaware, Lack. & Western R. R. Co., 22 Hun. App. Div. 273, 276, on facts almost precisely like those at bar, the appellate division of the New York Supreme Court ruled: "If the conductor was negligent, it does not necessarily follow that de-

fendant was relieved from liability for its negligence."
Next, in Chicago & Alton R. R. Co. v. Harrington, 192
Ill. 9, 28-30, the plaintiff was employed by a railroad
other than the defendant; he was injured in a collision
between cars of his company and a locomotive of the
defendant company; it was contended that the injury
was due to neglect on the part of fellow members of his
train crew in failing to keep a proper lookout. The
court held that, even though it were true plaintiff's co-
workers were to blame in the respect indicated, since
such fault was combined with the negligence of the de-
fendant in failing to close a switch, both of which
causes contributed to the accident, either or both wrong-
doers were liable to the plaintiff, so long as the latter
was free from contributory fault, and that the negli-
gence of one could not be used to exonerate the other.
See also Wood v. Penna. R. R. Co., 177 Pa. 306, 312,
where we expressly recognized the general principle
governing the above cases, i. e., that "an innocent third
person cannot be deprived of his remedy because his in-
jury resulted from the concurrent negligence of two
others." On the facts at bar, we are not convinced the
court below erred in ruling that the negligence of the
conductor could not be imputed to the plaintiff so as to
exonerate the defendant company.

No more could the trial court have held, as a matter
of law, that the plaintiff himself was guilty of contribu-
tory negligence. When we consider all the facts in this
case, it is clear that, even though, where the plaintiff
stopped to make his original observation, the prospect to
the west was obscured by a train standing on the siding,
this circumstance was not sufficient to require a motor-
man to descend from his car and advance to a point
where he could get a clear view, as the defendant con-
tends it was, under our decisions, the plaintiff's duty to
do before attempting the crossing. In Kinter v. Penna.
R. R. Co., 204 Pa. 497, relied upon by appellant, we
ruled, following the logic of Penna. R. R. Co. v. Beale,

73 Pa. 504, that when a driver stops at a point where an obstruction prevents a proper view of the railroad he is about to cross, he must descend from his vehicle and, if necessary, walk to a point where the prospect is clear (see also Mankewicz v. Lehigh Valley Co., 214 Pa. 386; Bistider v. Lehigh Valley R. R. Co., 224 Pa. 615; Craig v. Penna. R. R. Co., 243 Pa. 455; Follmer v. Penna. R. R. Co., 246 Pa. 367). While we have not departed from the rule just stated, yet in Messinger v. Penna. R. R. Co., 215 Pa. 497, where the plaintiff stopped at a point from which, at the time, he had a view of only about 80 feet in the direction of the approaching train, we held that, since he had stopped at the customary place, it was for the jurors, and not for the court, to say whether he had exercised due care (see also Hanna v. Philadelphia & Reading Ry. Co., 213 Pa. 157); and in Calhoun v. Penna. R. R. Co., 223 Pa. 298, 300, we said: "Where a driver has stopped at the usual place for stopping, from which he has a view of the tracks, whether he should go forward in advance of his team to a better place to look, is a question to be determined by the circumstances of the particular case." In short, when all the cases on the subject are read together, it appears that the rule may now be stated thus: When a driver stops at a place where he cannot get a good view of the railroad he is about to cross from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such a view, and his failure so to do constitutes contributory negligence in law, for stopping "where an approaching train cannot be seen......is not an observance of the duty to stop, look and listen" (Mankewicz v. Lehigh Valley R. R. Co., supra); but when he comes to a standstill at a usual stopping place, where he can get some view of the tracks, whether he should go forward to a "better place to look," is a question for the jury to determine. In addition to the cases already cited, see Leftage v. Balto. & Ohio R. R. Co., 250

Pa. 452, where the plaintiff obeyed this rule, yet was injured, and a recovery was allowed.

To return to the facts before us, we have at no time held that, when a driver, much less a motorman in control of a trolley car, approaches a railroad crossing where the safety gates are down, making as careful observations as he can according to the circumstances, and a locomotive passes, whereupon the safety gates are raised, it is his duty to descend from his vehicle and make further observations before crossing the tracks. On the contrary, we have repeatedly said that while open safety gates do not relieve one about to cross a railroad from the duty of exercising due care, yet the lifting of the gates is an intimation that no train is approaching and an invitation to make the crossing; further, that, where gates are opened at a time when a train is approaching, it is not only evidence of negligence on the part of the railroad company, but is a fact for the consideration of the jury in determining whether the injured plaintiff exercised proper care according to the circumstances: McCarthy v. Philadelphia & Reading Ry. Co., 211 Pa. 193, 201; Messinger v. Penna. R. R. Co., 215 Pa. 497; Roberts v. Del. & Hudson Canal Co., 177 Pa. 183, 190; Fennell v. Harris, et al., 184 Pa. 578, 581-2; McGuigan v. Penna. R. R. Co., 224 Pa. 594. In the present case, when we take into consideration the fact that the plaintiff was a motorman on an enclosed platform of a trolley car, that the safety gates were actually down when he came to the crossing, that after a locomotive had passed, which apparently was the only impending danger, the gates were opened, that the plaintiff took such observations as he could before starting and continued to exercise care while attempting to cross the railroad, entirely irrespective of the signalling by the conductor, it is apparent it could not be ruled as a matter of law that the plaintiff was guilty of negligence in failing to descend from his car, or in any other material respect.

The safety switch maintained by the trolley company at the crossing in question could have had no material weight in the case; for, clearly, it was not relied upon by any one at the time of the accident. The plaintiff knew that the operator was in the tower, above obstructions, in a position to see the approach of all trains, hence it was but reasonable that he should place dependence upon the invitation to cross which was impliedly extended by the raising of the gates. The mere fact that the conductor also kept a lookout ahead of the car, and signalled the plaintiff to approach, would not, in itself, be enough to defeat the latter's right of recovery: King v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 242 Pa. 497; Young v. Philadelphia Rapid Transit Co., 248 Pa. 174; also see McGuigan v. Penna. R. R. Co., 224 Pa. 594. From the testimony as presented, it could not be found, as a matter of fact, whether the conductor approached to the center of the railroad immediately after the safety gates were opened, or went there and signalled the plaintiff contemporaneously with the raising of the gates; but, however that may be, conceding the negligence of the conductor, the rule is, "If the defendant's negligence concurred with some other event, other than the plaintiff's fault, to produce the plaintiff's injury, so that it clearly appears that but for such negligence (on the part of defendant) the injury would not have happened, and both circumstances are closely connected with the injury, in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time" (Burrell Township v. Uncapher, 117 Pa. 353, 362; Plymouth Township v. Graver, 125 Pa. 24, 37; Eagle Hose Co. v. Electric Light Co., 33 Pa. Superior Ct. 581, 586; see also O'Malley v. Philadelphia Rapid Transit Co., 248 Pa. 292, 297), and this rule applies in the present case.

The trial judge charged the jury with his usual skill and ability; while he told them that the alleged negli-

gence of the conductor would not defeat the plaintiff's
right of recovery, yet he made it perfectly plain that, if
the plaintiff relied upon the signal from the conductor,
and not upon the raising of the gates, as an invitation to
cross the railroad, then the negligence of the defendant
was not a contributing cause of the accident, and there
could be no recovery. After stating this in the early
part of his charge, almost the last words he said to the
jury were: "The claim of the plaintiff in this case is
that this company was negligent in raising these gates
before his face and inviting him to go across the railroad
where he himself could not see where he was going,
when a train was in fact coming, which the railroad
company should have known was coming; and that, by
reason of that, at least in part, he went across and was
injured. The defendant says on that subject that under
all the circumstances shown here about this arrange-
ment of the street car derailing switches, and the con-
ductor going forward and so forth, the plaintiff in this
case did not rely on the gates going up at all, and there-
fore the invitation by the raising of the gates did not
contribute to the injury. If you find that to be the case,
then I have said to you, you will find a verdict for the
defendant. If you find that the raising of the gates was
the cause of the injury, or contributed to it, you will
find for the plaintiff on the subject of negligence; then,
before you can find a verdict for the plaintiff, you will
have to go on and determine this question I have de-
tailed to you of contributory negligence on the part of
the plaintiff, and make up your minds whether or not
he was negligent. If you find he was, then that is the
end of this case. If you find both of those things in
favor of the plaintiff, then you will find a verdict for
the plaintiff, and you will have to assess the damages as
I have described to you." It remains but to say that all
questions of fact, as well as the issues of the defendant's
negligence and plaintiff's contributory negligence, were
left to the jury, so far as it was proper to do so; we are

not convinced of any error which calls for a new trial or for disturbance of the judgment.

The assignments of error are overruled, and judgment is affirmed.