## Burkett, Appellant, *v.* Pittsburgh & Shawmut R. R. Co. (No. 1).

*Negligence—Railroads—Grade crossings—Case for jury.*

It is the rule that when a driver stops at a place where he cannot get a view of the railroad he is about to cross, from the vehicle in which he is riding, it is his duty to make further observation, and in some cases, to alight and walk to a spot where he can secure such view. But when a driver has stopped at the usual place for stopping from which he has view of the tracks whether he should go forward for a better place to look is a question to be determined by the circumstances of the particular case.

The plaintiff was driving southwardly over the road which crossed the railroad diagonally. The length of view from the crossing in the direction in which the train came was about 650 or 700 feet— beyond that the view was shut out. On the side track, at the right of the crossing as the plaintiff traveled two coal cars were standing; the nearest within about thirty-seven feet of the highway. The plaintiff stopped when about twelve feet from the siding and looked and listened. This was the usual place at which persons approaching the crossing from that side stopped to look for trains. The cars on the siding shut off his view of the track for a space of about 240 feet, but above that distance he could see up the track as far as it was visible from the crossing. He waited to observe that there was no train on the track beyond the cars on the siding and then started to cross. After starting he observed a train coming about seventy or seventy-five yards from him, and deeming it impossible to reverse and get it off the track, he tried to make the crossing as the safest plan for avoiding danger.

Under such circumstances the case is for the jury and a verdict for the plaintiff will be sustained.

Argued April 13, 1920. Appeal, No. 111, April T., 1920, by plaintiffs, from judgment of C. P. Jefferson

County, April T., 1919, No. 48, for defendant non obstante veredicto, in the case of Melvin Burkett, by his father and next friend, Ralph J. Burkett, and Ralph J. Burkett in his own right, v. The Pittsburgh & Shawmut Railroad Company. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Trespass to recover damages for personal injuries. Before CORBET, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for $750 for Ralph J. Burkett and for $1,000 for Melvin Burkett.

Subsequently the court, on motion, entered judgment for defendant non obstante veredicto.

*Errors assigned* were instructions to the jury and in entering judgment for the defendant.

*Charles J. Margiotti,* and with him *Gillespie & Gillespie,* for appellants.

*Edgar W. Tait,* and with him *Edwin E. Tait* and *Edward A. Carmalt,* for appellee.

OPINION BY HENDERSON, J., July 14, 1920:

The plaintiff's action arose out of a collision of a train of the defendant company with the plaintiff's automobile at a grade crossing on the public highway leading from Brookville to Ramsaytown near which latter place the plaintiff lived. He was returning home accompanied by his son, then about five years old, and was driving his car. Both of the occupants of the car were injured and the automobile was badly damaged. After a verdict in favor of the plaintiff, a rule was entered for judgment in favor of the defendant non obstante veredicto which rule was subsequently made absolute. The action of the court was based on the conclusion that the plaintiff was guilty

of contributory negligence. The question presented for our consideration is therefore whether the case was one for the jury. A verdict having been rendered in favor of the plaintiff, the evidence must be regarded in the light most favorable to him not only with respect to the direct testimony, but to the inferences which may fairly be drawn from the facts as disclosed. When so regarded, there was evidence which would support the following findings of fact: The plaintiff was driving southwardly over the road which crossed the railroad tracks diagonally; there was a main track and a siding at the crossing; the tracks were straight for two or three hundred feet south of the crossing beyond which there was a curve around the hill; the train came around this curve on a down grade to the crossing. The length of the view from the crossing in the direction in which the train came was about 650 or 700 feet—beyond that the view was shut out. The convex line of the curve was on the side at which the plaintiff approached the tracks. On the side track, at the right of the crossing as the plaintiff traveled two coal cars were standing; the nearest within about thirty-seven feet of the highway. The plaintiff stopped when about twelve feet from the siding and looked and listened. This was the usual place at which persons approaching the crossing from that side stopped to look for trains. The cars on the siding shut out his view of the track for a space of about 240 feet, but above that distance he could see up the track as far as it was visible from the crossing. He waited to observe that there was no train on the track beyond the cars on the siding and then started to cross. It was shown by the plaintiff's evidence that there was no better place to safely stop for further observation after he started. The tracks were about eight and one-half feet apart—his car was about eleven feet long. When starting to cross he threw his car "in low" and afterward "got the car in second" and was just at the edge of the main track when he observed the train coming about seventy

or seventy-five yards from him. His car was moving and deeming it impossible to reverse and get it off the track, he tried to make the crossing as the safest plan for avoiding danger. His car was struck on the extreme rear end after he had crossed the rails. The learned trial judge disposed of the case on the assumption that the plaintiff had not performed his full duty in looking for a train, but this conclusion we think from a careful examination is not warranted by the evidence.

It is the rule that when a driver stops at a place where he cannot get a view of the railroad he is about to cross from the vehicle in which he is riding, it is his duty to make further observation and in some cases to alight and walk to a spot where he can secure such view. But when a driver has stopped at the usual place for stopping from which he has a view of the tracks whether he should go forward for a better place to look is a question to be determined by the circumstances of the particular case: Calhoun v. P. R. R. Co., 223 Pa. 298. And in Siever v. R. R. Co., 252 Pa. 1, the rule was said to be when the driver comes to a standstill at a usual stopping place where he can get some view of the tracks whether he should go forward to a better place to look is a question for the jury to determine. To the same effect is Messinger v. R. R. Co., 215 Pa. 497. Stopping is opposed to the idea of negligence as was said in Ely v. R. R. Co., 158 Pa. 233, and unless, notwithstanding the stop, the whole evidence shows negligence so clearly that no other inference can properly be drawn from it, the court cannot draw that inference as a conclusion of law, but must send the case to the jury. This ruling is in line with Muckinhaupt v. Erie R. R., 196 Pa. 213, and is reaffirmed in Jester v. Phila., Baltimore & Washington R. R. Co., in which an opinion was filed in the Supreme Court on March 22, 1920, and not yet reported. The facts in the latter case were less favorable to the plaintiff than those affecting the appellant, but Justice KEPHART shows that the court below erred in granting a compulsory nonsuit.

The evidence of the appellant is clearly to the effect that from the place where he stopped he had a view of the track over which the train would come which might imperil his safety at the crossing, and there is not substantial ground for the conclusion that at the time he made his observation there was a train obscured by the cars standing on the siding. If the train moving at the rate shown by the evidence, twenty-five or thirty miles an hour, had been shut out from the plaintiff's view by the freight cars when he stopped, it would probably have been on the crossing before he started his car and a jury might fairly have concluded that the freight cars were not an obstruction to his view of that part of the track on which the train must be which would interfere with his crossing. There is sufficient evidence of the failure of the defendant to give warning by bell or whistle of the approach of the train, and the testimony introduced for the plaintiff shows it was running on a down grade as if "coasting" thus making less noise than is usually the case with a moving train. The evidence was contradictory and varying inferences might be drawn therefrom. The jury resolved the contradictions and drew the inferences favorably to the plaintiff. Whether there was a better place from which the plaintiff could have observed the train without peril to himself was not a question of law, under the evidence, to be disposed of by the court, but a question of fact depending on the credibility of witnesses, their opportunity to observe, and the impressions given by photographs and maps introduced as evidence during the trial of the case. When the actions involved in an accident are timed by seconds and the zone of safety is in immediate proximity to that of danger, when the control of a team or the management of an automobile is associated with peril of an on-coming train, the driver required to exercise due care cannot be charged as a matter of law with too nice a calculation of time and space. At the most a very few seconds intervened between the appearance of the train

around the curve and the collision at the crossing, and in this time it was necessary for the plaintiff to start his car, advance to the track on which the train was approaching, and cross before its arrival, if possible. Whether he exercised the care and caution which a man of ordinary prudence is expected to do under the stress of the situation, the plaintiff was entitled to have determined by the jury. It was said in Philpott v. R. R. Co., 175 Pa. 570: "When the material facts are disputed or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine. When they are, the line of demarkation in that respect between the duty of the court and that of the jury should be carefully guarded." Under the evidence we are all of the opinion that the question of contributory negligence was a question for the jury and that the court was in error in entering judgment for the defendant non obstante veredicto.

The judgment is reversed and the record remitted to the court below with direction to enter judgment on the verdict.