## Gelwicks, Appellant, *v.* Pennsylvania Railroad.

Argued May 26, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Paul A. Kunkel,* with him *Lynn M. Irvine,* for appellant, cited: Siever v. R. R., 252 Pa. 1; Gerg v. R. R., 254 Pa. 316.

*Caleb S. Brinton,* for appellee, cited: Barthelmas v. R. R., 225 Pa. 597; Follmer v. R. R., 246 Pa. 367; Benner v. Ry., 262 Pa. 307; Serfas v. R. R., 270 Pa. 306; Schofield v. R. R., 276 Pa. 508; Miller v. R. R., 299 Pa. 63.

OPINION BY MR. JUSTICE SADLER, June 21, 1930:

G. Walter Gelwicks sued to recover for personal injuries and damage to his automobile resulting from a collision with one of defendant's trains at a highway intersection. Market Street, in the Borough of Mechanicsburg, crosses two tracks of the railroad at grade. Buildings obstruct the vision of a driver approaching from the south, as was the plaintiff, and a view to the east or west could not be obtained until he came close to the rails. The claimant here had lived for many years within four blocks of the northern side of the crossing, and passed over it frequently each week. On a clear afternoon, in October, 1928, he was returning to his home, and, when within eight or ten feet of the first rail, stopped, looked and listened for possible trains. No testimony showed this to be the usual place for stopping, and, as he stated, "Well, eight feet from the track you don't have much view of either track. You have to get closer to have a clear view of either track."

Notwithstanding this, he proceeded, looking to the west to see if a train was coming on the eastbound track, which was the first one necessary to be traversed, but he did not take any notice of conditions in the opposite direction until the moment he entered on the first rail, when he was struck by a draft of cars backing westward thereon. Evidently, he was under the impression that no danger was to be expected from that side until the northern and westbound line was reached. Under the circumstances, detailed by plaintiff himself, the court below held him guilty of contributory negligence, and entered a compulsory nonsuit, which it subsequently refused to take off. The question of the exercise of due care by defendant in moving its train, or the sufficiency of the signal given, need not be considered, if the determination of the trial judge was correct.

There was no testimony offered to show that plaintiff stopped at the usual place, and, as he declared, "You [would] have to get closer to have a clear view of either track." Where there is dispute as to the propriety of the place chosen for observation, the question, whether plaintiff used proper diligence, is for the jury; but when there is no such doubt, and it appears that he stopped at a point where he could not see, it is for the court to determine if due care was taken: Urias v. P. R. R., 152 Pa. 326; P. R. R. v. Beale, 73 Pa. 504. The requirement to stop, look and listen is not satisfied by coming to a standstill at a point where observation cannot be made, if there is apparent danger ahead: Hoffman v. P. & L. E. R. R. Co., 278 Pa. 246. One attempting a crossing must comply with this mandatory duty, or no recovery can be had when damages are suffered.

The obligation of a traveler is not satisfied merely by stopping, but he must continue to look until the danger point has been passed. What was said by Mr. Justice FRAZER, in Massinger v. Reading R. R. Co., 300 Pa. 6, 8, is applicable here: "Plaintiff did not perform his full duty by looking both ways after having

stopped and before again starting his car. The law required him to continue to look as he advanced (Krenn v. Ry., 259 Pa. 443, 446; Nolder v. P. R. R., 278 Pa. 495, 498) ; and especially under the circumstances present here, where, under his own version of the situation, his view of the track would be immediately increased as he moved forward. His admission that he did not look again and did not see the approaching train until it was practically on top of him, as he testified, shows conclusively that he did not perform his duty, and indicates that he neglected to look or that he failed to see what must have been obvious, or, seeing it, took the chances. In any view of the situation the accident was the result, in part at least, of his own carelessness." The plaintiff in the instant case frankly stated that he looked to the west, but not to the east until entering on the first rail, when he was instantly struck.

It is urged, however, that proof of an additional fact, here appearing, makes possible a recovery, and required submission of the case to the jury. To the north of the tracks, at the western side of the highway, was a box containing a device for controlling a signal system. When plaintiff was moving in that direction he saw the defendant's watchman standing there, his back toward him, but with his face turned slightly to the east. Counsel therefore insists that warning of the moving train on the eastbound track should have been given by the employee, and, since none was, the driver had the right to assume the way was clear, and its passage could be safely undertaken. Our authorities are uniform in holding that, ordinarily, the failure to supply a watchman and safety gates,—and the same is true though such have been provided,—will not relieve the traveler from exercising due precaution for his own safety: Miller v. P. R. R., 299 Pa. 63; Zotter v. L. V. R. R. Co., 280 Pa. 14; Lohrey v. P. R. R., 36 Pa. Superior Ct. 287.

If it appears in addition that some act was performed by the watchman, as shown by giving a direction with

flag, lantern, or voice to proceed, upon which the driver depends and acts (Hoffman v. P. & L. E. R. R. Co., supra), or the safety gates are at the time lifted from a horizontal position, showing a clearance of the right-of-way (Siever v. P., C. C. & St. L. R. R., 252 Pa. 1), the question of due care becomes one for the jury. Here, no act of the railroad employee on the far side of the tracks misled the plaintiff, and the former, having his back toward the driver, evidently did not see the latter approach from the south. Under the circumstances, Gelwicks was not relieved of his duty to use proper care to protect himself. He did not stop where he could see, and advanced, without looking to the east, from which direction the train was approaching, until he entered on the first rail, where his car was instantly hit. The essential facts were testified to by the plaintiff himself, and stand undisputed. Under the circumstances disclosed it became the duty of the court to hold as a matter of law that no recovery could be had.

The order refusing to remove the nonsuit is affirmed at the costs of appellant.