Mayer et al., Appellants, *v.* Pennsylvania Railroad.

Argued April 30, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

reargument refused August 13, 1943.

*Edward O. Spotts, Jr.,* with him *J. L. Weinstein,* for appellants.

*Samuel W. Pringle,* of *Dalzell, McFall & Pringle,* for appellee.

OPINION BY STADTFELD, J., July 21, 1943:

This case comes before the court on an appeal from the entry of judgment non obstante veredicto. The questions involved in this appeal are: 1. Were the acts of the defendant corporation, by its watchman, such as to constitute negligence? 2. If so, were the negligent acts the proximate cause of plaintiff's injuries? 3. If so, was the plaintiff free of contributory negligence so as to permit recovery?

If no negligence on the part of the defendant is found, there is no need to discuss the existence or non-existence of causation and contributory negligence.

The relevant facts were these: On a clear day, August 25, 1937, about 5:30 P. M., the plaintiff, as a guest, was riding in the front seat of a new Studebaker sedan, driven by one William Sancosky. The occasion was a joy ride apparently in celebration of the fact that Sancosky had received his driver's license just that morning, after having learned to drive on a learner's permit the three months preceding. Both were young, the driver eighteen, and the plaintiff seventeen. They proceeded northward on Duquesne Avenue parallel to the tracks of the defendant in the City of Duquesne. The driver made a right hand turn eastward on a road which a few feet away formed the crossing in question. The driver had a view of 3000 feet northward up the tracks as he approached the

crossing, as well as after he made the right turn, except for a brief interval when his view was blocked by a watchman's shanty. The crossing consisted of four main tracks and two sidings on the east side of the main tracks. The plaintiff, meanwhile, was not paying any attention as to the course of the driver, but was hunched over endeavoring to dial in a new station on the auto's radio. He was not cognizant of his surroundings until he heard a shout of "Stop! Go Back!" At that time, he testified, the front of the auto was over the first rail of the first and southbound track. In answer to the shout, the driver came to a stop with the radiator of the car just over the second rail of the same track. Looking up in the direction of the shout, plaintiff saw defendant's watchman, who was facing towards the west between the fourth and fifth tracks, motioning towards them with a stop sign he held in his left hand. Just at that time, plaintiff testified, the caboose of a freight headed north on the fourth track was just clearing the crossing. Plaintiff looked to his left, northward, and saw bearing down upon them from a distance of 350 feet, the passenger train of the defendant. This train was on its regular run between Pittsburgh and Elrama, a commuter's train scheduled to stop at the Duquesne Station immediately south of the crossing. The driver stepped on the starter, attempting to start the motor he had stalled in coming to a stop, but the car was in gear with the clutch engaged and the auto merely rocked back and forth. Sancosky thereupon opened the door on the driver's side and made his escape. The plaintiff, in his excitement, seized the window winder in a frantic attempt to open the door on his side. As he realized his mistake and sought to seize the door handle, the car was struck by the engine, which came to a stop shortly, part of the tender still on the crossing. The driver, who was in the Army and stationed in Florida at the time of the trial in the lower court, did not testify. The

plaintiff brought an action of trespass to recover damages for personal injuries sustained as a result of the collision. The jury returned a verdict in the sum of $2500 for the plaintiff and $1000 for the father.

The only question of defendant's negligence before the court is based upon the actions of the watchman immediately prior to the collision. The decisions in this Commonwealth are controlling on that point. In *Gerg* v. *Penna. R. Co.*, 254 Pa. 316, 321, 98 A. 960, a charge by the lower court that a railroad watchman's duty was either to warn people not to cross or to signal them to cross, was upheld. See also *Rosenfield* v. *Lehigh Valley R. Co.*, 113 Pa. Superior Ct. 424, 173 A. 476. The plaintiff contends that when the watchman emerged from behind the passing freight, due care under the circumstances required him to do absolutely nothing, in which event the auto would have crossed in safety. But had the watchman idly stood by to permit the occupants to venture forth upon a risk known to him, he would have been derelict in his duty to the occupants and to his employer. If, contrary to his judgment, he had waved the driver forward in an assurance of safety in such a course, he would again have been derelict in his duty under the reported cases in this Commonwealth. He had assumed his position on the crossing before the auto approached the crossing, and in his judgment the train was sufficiently close to the crossing to make it imperative for him in view of his duties to warn the occupants of the imminence of danger. The plaintiff first heard him shout and saw him gesticulate when the auto was already on the first rail. But it was only the negligence of the driver, who had failed in his duty to stop, look, and listen, which placed the auto into its position of peril. It was the inexpertness of the driver which stalled the auto, and his ineptness which foiled his attempt to back the auto off the tracks to a position of safety. There is a great

distinction between inviting an individual into a position of unreasonable risk, and the attempt of the watchman exercising his best judgment to extricate that individual from peril once the latter has placed himself into such a position. Plaintiff came onto the crossing unbidden. Under the evidence submitted in the court below the contention that the watchman was negligent in stopping the automobile is untenable. Under his duty to observe the movement of trains and to warn persons about to cross of imminent danger, those who seek to cross are to be given a reasonable opportunity to get over safely, with a safe margin added in view of the chance that something might occur to retard or entirely stop the progress of those seeking to cross. The margin of safety which permits but a bare crossing with but a few seconds to spare if nothing happened is insufficient. *McGuigan v. Penna. R. Co.*, 224 Pa. 594, 73 A. 958. When the watchman remonstrated at the approach of the auto, he indicated thereby that in his judgment a reasonable opportunity to cross no longer existed. It was said in another case involving a watchman who prevented a horse and carriage from entering upon a track, on which a train was approaching, by waving the lantern in front of the horse, which promptly ran off and caused injury to one of its occupants when the carriage upset, that an act done upon a sudden emergency when life is apparently in peril, though it be mistaken, is not negligent. *Floyd v. Philadelphia & Reading R.*, 162 Pa. 29, 44, 29 A. 396. In the case just cited, death and destruction appeared inevitable when the watchman ran forward to stop the carriage. In the instant case, the degree of danger seemed less, but the judgment of the watchman in the emergency must prevail, for it is not within the province of this court to foist upon a watchman whose very duties consist of the prevention of forfeiture of lives and the destruction of property the burden of making minute calculations.

The plaintiff relies upon *Gelwicks v. Penna. R. Co.,* 301 Pa. 68, 151 A. 581, to show that the acts of the watchman constituted negligence. But there again, as in many other cases, the acts referred to are affirmative acts inducing the driver to enter upon the crossing, and upon which the driver depends and acts and is misled, thereby making the question of due care one for the jury. Here, of course, the watchman gave no invitation or order to proceed but to stop and withdraw.

*Richardson v. Penna. R. Co.,* 338 Pa. 155, 12 A. 2d 583, is also inapplicable, for there a pedestrian who was about to step off the track on which the train was coming was prevented from reaching a position of safety when the gates descended in his pathway, creating a trap which frustrated his escape. There was in addition a deceptive assurance of safety when he first entered upon the crossing, for the gates were up. Such assurance was lacking here, for the watchman, by whistling, shouting, and gesticulating, did all in his power to prevent the approach of the auto bearing the plaintiff into a position of danger.

If the plaintiff suffered harm, it was not through the negligence of the defendant or its watchman but through the incompetence of the driver, who negligently failed to stop, look, or listen, and was unable to escape from the predicament which his negligence had brought him.

The judgment is affirmed.