Edward Fennell, Appellant, *v.* Joseph S. Harris, Edward M. Paxson and John Lowber Welsh, Receivers of the Philadelphia and Reading Railroad Company.

*Negligence—" Stop, look and listen "—Grade-crossing—Question for jury.*

In an action against a railroad company to recover damages for personal injuries suffered at a grade-crossing, the plaintiff is entitled to have his case go to the jury where the view of the track was obstructed, and the evidence on his behalf tends to show that he stopped, looked and listened as he approached the crossing; that an open safety gate invited him forward; that the flagman twice signaled to him to cross over; that he started, and at the first moment when a view of the tracks could be had he saw a train coming rapidly towards him, so near to him as to make escape impossible.

Argued Jan. 10, 1893. Appeal, No. 168, Jan. Term, 1897, by plaintiff, from order of C. P. No. 1, Phila. County, Dec. Term, 1895, No. 126, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*James M. Beck,* with him *William F. Harrity* and *A. R. Haig,* for appellant.—It is the duty of those in charge of a train, when

approaching a public crossing, to give notice by whistling, ringing the bell, or other device, sufficient to give warning of its approach, and if they fail to do so, the railroad company is negligent: Haverstick v. Pa. R. R. Co., 171 Pa. 101.

Where a railroad company crosses a public street at grade and maintains safety gates for the safety of the public, and where on the approach of the train to such crossing the safety gates are not lowered but are maintained in a raised position until it is too late to warn the public of the approach of the train, such failure to lower the safety gate is some evidence of negligence on the part of the defendant, the value of which is for the jury: Matthews v. Phila. & Reading R. R. Co., 161 Pa. 28; Roberts v. Canal Co., 177 Pa. 183.

Stopping is opposed to the idea of negligence, and, unless, notwithstanding the stop, the whole evidence shows negligence so clearly that no other inference can properly be drawn from it, the court cannot draw that inference as a conclusion of law, but must send the case to the jury: Ely v. R. R. Co., 158 Pa. 233 ; Gray v. R. R. Co., 172 Pa. 383.

The question whether a traveler in a given case has stopped at the best place is necessarily a question of fact, not of law, and it must, as a general rule, be passed upon by a jury: Arnold v. R. R. Co., 161 Pa. 1; Ellis v. R. R. Co., 138 Pa. 506; Whitman v. Penna. R. Co., 156 Pa. 175; McNeal v. Ry. Co., 131 Pa. 184; McWilliams v. Keim, 22 W. N. C. 372; Neiman v. D. & H. Canal Co., 149 Pa. 92; Ry. Co. v. Frantz, 127 Pa. 297.

The case was for the jury: Philpott v. Penna. R. Co., 175 Pa. 570; Smith v. B. & O. R. R., 158 Pa. 82; Davidson v. Ry. Co., 171 Pa. 522; Laib v. Penna. R. Co., 180 Pa. 503; Cookson v. Ry., 179 Pa. 184; Link v. Phila. & Reading R. R., 165 Pa. 75; Carr v. Phila. & Reading R. R., 99 Pa. 505; Ry. v. Frantz, 127 Pa. 297.

*Gavin W. Hart*, for appellees.—The injury received by the plaintiff was attributable solely to his own gross carelessness. It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive : Carroll v. R. R., 12 W. N. C. 348; Moore v. R. R., 108 Pa. 349; Bell v. R. R., 122

Pa. 58; Marland v. R. R., 123 Pa. 487; Mooney v. R. R., 126 Pa, 244; Aiken v. R. R., 130 Pa. 380; Blight v. R. R., 143 Pa. 10; Hauser v. R. R., 147 Pa. 440; Urias v. R. R., 152 Pa. 326; Irey v. R. R., 132 Pa. 568; Myers v. B. & O. R. R., 150 Pa. 390; Newhard v. R. R., 153 Pa. 417; Lees v. P. & R. R., 154 Pa. 46; Smith v. R. R., 160 Pa. 119; Gangawer v. R. R., 168 Pa. 270; Davidson v. Ry., 171 Pa. 522; Hovenden v. R. R., 180 Pa. 250.

OPINION BY MR. JUSTICE WILLIAMS, February 21, 1898:

This appeal presents a very close. question. It is whether the facts shown by the testimony on the part of the plaintiff are of such a character as to justify the court below in pronouncing upon their effect as a matter of law, or whether they should have been submitted to the jury as raising a question of fact for their decision. The distinction between the functions of the court and the jury is, in a general way, quite clear, but cases are sometimes encountered, and this seems to be one of them, in which the practical application of the distinction to the facts of a case trying is by no means easy. The plaintiff sought to recover ·damages for an injury received on the defendants' railroad at a crossing, on the allegation that the negligence of the defendants' employees was the cause of his injury. The defendants replied that the testimony showed contributory negligence without which the injury could not have taken place. The court below entertained the same opinion and entered a compulsory nonsuit. From the refusal to take off the judgment so entered, this appeal is taken. We are therefore to look at the case made out by the plaintiff ·in order to see if he was entitled to go to a jury upon the question of his own negligence, as the evidence stood when he closed his case. The plaintiff was a carter. In company with another carter and one or two helpers, he was on his way to Twenty-seventh and Jefferson streets. The party was coming north on Twenty-fifth street, and when they reached Green street they turned east, intending to go to Twenty-fourth street, in order to avoid a grade that had to be encountered if they continued up Twenty-fifth street, and then turn north again. The defendants' railroad crosses Green street near its intersection with Twenty-fifth street, and a little east of such intersection with its four tracks. The plaintiff and his company on turning into Green street found the safety gate at

the crossing raised, but the plaintiff says they nevertheless stopped, looked and listened, to see if there was anything to indicate an approaching train. The flagman seeing them signaled them to come on, and they started to cross in the following order: Lacey, the other cartman, was walking beside his horse in the lead. Fennell, who had been walking with Lacey, fell back as they started to cross the tracks and was, as he says, near the rear of Lacey's cart. His own horse and cart was in charge of Lehr just behind him. As they moved forward there was a switch engine on the north of them that was plainly visible, but the view down the track was obstructed by the direction or angle at which the railroad approached Green street, and by a row of empty box cars standing on the westernmost track extending practically up to Green street from the south. After they had started, the movements of the switch engine disturbed them, and they stopped for a moment, when the flagman again signaled them to cross over. At this signal, they moved forward. Lacey says that when he got to or on the third track, he saw a train coming towards them from the south on that track and, by quickening the motion of his horse, succeeded in getting over. Fennell, who was at the rear of Lacey's cart, got on the third track just in time to see and be almost instantly struck by the train. He says: " The flagman gave a signal to come on. I crossed. I don't know any more. I could not say whether I heard the bell or the whistle, I just looked and I saw the engine approaching. I don't know anything more after that."

It is said by counsel for the defendants that Lacey saw the train and got out of the way and, therefore, if Fennell had exercised proper care he could have seen the train and escaped the danger. But it must be remembered that Fennell was some ten or fifteen feet behind Lacey, and when the train became visible to him, it may be that it was too late for him to escape. Upon his testimony, this is possible, if not probable. It is a question of fact, as it seems to us, whether, in view of all the circumstances, the open gate, the repeated signals of the flagman, the absence of a warning by the train of its approach and the impossibility of seeing down the tracks until fairly upon them, the plaintiff omitted any precaution that a prudent man should have taken to secure his safety from danger. He was respon-

sible for none of the circumstances to which we have referred. He had the assurance of the defendant company by the open gate and by the positive intimations of the flagman, that there was no train approaching within such a distance as could threaten his safety in crossing the tracks, and there was nothing to counteract this assurance or put him on notice of danger. He knew that his view of the tracks was obstructed, but one who had superior knowledge of the moving trains allayed his apprehensions by signaling him that it was safe to cross at that time, and that he should proceed to do so. In view of all these considerations and his own testimony the question of contributory negligence was surely not a question of law. It depended upon the plaintiff's credibility, upon the situation of the obstruction to his view down the railroad, upon the opportunity to escape after he saw the train, upon the want of any warning of its approach by the train, and upon the conduct of the flagman. These were to be considered. The natural inferences to be drawn from them were to be settled, and the jury was to determine whether the plaintiff did all that a reasonably prudent man could be expected to do under such circumstances or not. If he is believed, he looked down the road at the first moment when it was practicable for him to see an approaching train, and when he did so, the train was practically on him. Upon this story, it is hard to see what it was possible for the plaintiff to do more than he did do. He stopped, looked and listened as he approached the crossing; the open safety gate invited him forward; the flagman signaled to him to cross over; he started, and at the first moment when a view of the tracks could be had, he saw a train coming rapidly towards him, and so near to him as to make escape impossible. If, as upon a motion for a compulsory nonsuit we must do, we take this testimony as true in every particular, the plaintiff made such a case of negligence by the railroad company as entitled him to go to the jury. We do not say that it entitled him to recover necessarily, but that it fairly put the company upon the defensive. The true rule upon the subject on which this appeal depends is stated in Davidson v. The Lake Shore & M. S. Railway Company, 179 Pa. 227, and this case falls within the province of the jury as there defined.

The judgment is reversed and a procedendo awarded.