## Zotter, Appellant, *v.* Lehigh Valley R. R.

*Negligence—Railroads—Grade crossing—Collision between train and wagon—Signals—Speed—Safety gates—Evidence—Contributory negligence—Stop, look and listen—Death—Presumption of care.*

1. In an action against a railroad company for death at a grade crossing, the question of the company's failure to give signals should not be submitted to the jury where the only evidence of failure to give the signals is the negative testimony of one witness for plaintiff, who was not shown to be attentive, while the engineer, fireman, conductor and three other men on the train all testify affirmatively that the whistle was blown and the bell rung on the approach to the crossing.

2. Nor will the plaintiff be entitled to go to the jury on the question of speed where the testimony of the single witness for plaintiff was not trustworthy as to what the speed was, while defendant, by witnesses qualified to speak, proved a nonnegligent speed.

3. Although safety gates at a railroad crossing are not lowered for an approaching train, still it is a traveler's duty to observe the precautions the law requires of him.

4. The doctrine that a person losing his life must be presumed to have exercised due care has no application where the evidence shows affirmatively the circumstances of the accident to the contrary; there can be no presumption as against such facts which are clearly proven.

5. Where a traveler is killed at a grade crossing when the safety gates were not lowered, the presumption, in the absence of evidence on the subject, that he stopped, looked and listened, cannot be applied so as to send the case to the jury, where the evidence for defendant shows that, if deceased had stopped, looked and listened

at two points before crossing he could not have failed to see or hear the on-coming engine with lights displayed, whistle blowing and bell ringing.

Mr. Justice SIMPSON dissented as to the contributory negligence of decedent as a matter of law.

Argued February 4, 1924.  Appeal, No. 164, Jan. T., 1924, by plaintiff, from judgment of C. P. Lehigh Co., Oct. T., 1921, No. 68, on directed verdict for defendant, in case of Mary Zotter v. Lehigh Valley Railroad Co. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband.  Before SEARLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant. Plaintiff appealed.

*Error assigned* was, inter alia, direction of verdict for defendant, quoting portion of charge directing verdict.

*Asher Seip,* with him *Dallas S. Gangewer,* for appellant.—Defendant was negligent: Siever v. Ry., 252 Pa. 1; McGuigan v. R. R., 224 Pa. 594; Roland v. R. R., 224 Pa. 630; Miller v. R. R., 67 Pa. Superior Ct. 249; Schwarz v. R. R., 211 Pa. 625.

The presumption is that plaintiff's decedent was rightfully on the highway and the railroad grade crossing at the time of the collision: Penna. R. R. v. Weber, 76 Pa. 157; Penna. R. R. v. Weiss, 87 Pa. 447; Blauvelt v. R. R., 206 Pa. 146; Patterson v. Ry., 210 Pa. 47; Hugo v. R. R., 238 Pa. 594; Terry v. R. R., 60 Pa. Superior Ct. 451; Rice v. R. R., 271 Pa. 180; Hanna v. R. R., 213 Pa. 157.

*L. H. Rupp,* of *Butz & Rupp,* for appellee, cited, as to safety gates: Greenwood v. R. R., 124 Pa. 572; Earle v. R. R., 248 Pa. 193.

As to stop, look and listen: Serfas v. R. R., 270 Pa. 307; Aiken v. R. R., 130 Pa. 380; Scofield v. Director Gen., 276 Pa. 508.

As to negative testimony: Rapp v. R. R., 269 Pa. 266; Anspach v. Ry., 225 Pa. 528; Keiser v. R. R., 212 Pa. 409; Knox v. Ry., 202 Pa. 504; Lonzer v. R. R., 196 Pa. 611.

As to contributory negligence: Rapp v. R. R., 269 Pa. 266; Anspach v. Ry. Co., 225 Pa. 528; Keiser v. R. R., 212 Pa. 409; Knox v. Ry., 202 Pa. 504; Lonzer v. R. R., 196 Pa. 611; Bernstein v. R. R., 252 Pa. 581; Miller v. R. R., 256 Pa. 142; Joyce v. R. R., 230 Pa. 1; Hanigan v. Ry., 257 Pa. 236; Miller v. R. R., 257 Pa. 517; Reigner v. R. R., 258 Pa. 257; Moses v. Ry., 258 Pa. 537; Kemmler v. Penna. Co., 265 Pa. 212; Kipp v. R. R., 265 Pa. 20.

OPINION BY MR. JUSTICE SCHAFFER, March 10, 1924:

Plaintiff's husband was driving a milk wagon east on Gordon Street in the City of Allentown on a December morning before daylight. Gordon Street crosses at grade and at a rightangle the double track railroad of defendant which lies north and south. As the team was making the crossing of the tracks and when the wagon had passed over the west and was on the east one of them, it was struck by an engine drawing a caboose and plaintiff's decedent was killed. Appellant's action to recover damages resulted in a directed verdict against her in the court below.

It was uncontradictedly shown on the trial through civil engineers called by defendant, who made a survey of the scene of the accident, that as the decedent approached the crossing and when he was 80 feet west of the first rail of the west track he had an unobstructed view in the direction of the approaching engine for 1,367 feet, at a point 12 feet west of that rail for 1,609 feet, and, while crossing the west track, for the same distance. No one saw him as he was driving along the street, not

until he was crossing the west track, his horse on a trot, when he was observed by the fireman of the locomotive, too late to avert the collision.   A witness, Schell, produced by plaintiff, who was a block and a half away on Gordon Street, heard the crash and saw the engine, "just a streak of lightning," as it crossed the street, but observed nothing so far as the team was concerned until the impact between it and the locomotive.   Without denial it was shown that safety gates, maintained by the railroad company to guard the crossing both night and day, were up at the time of the tragedy; the watchman who operated them was asleep.

The statement of claim did not set forth that the decedent stopped, looked and listened as he approached the tracks.   In the view we take of the case this is not of consequence.   The negligence alleged was (1) the approach of the engine to the crossing without giving warning by bell or whistle, (2) excessive speed and (3) failure to have the safety gates lowered.   As to each of these in their order, what was shown and what are the controlling rules of law?

The only testimony on the subject of the failure to warn by bell or whistle is that of the witness Schell, who, as before stated, was a block and a half away, not shown to be attentive to the train or observing the team; all he was able to say was that he did not hear any warning given; he did not even know of the presence of the train until the crash.   Countervailing this negative testimony was that of six witnesses who were in the engine and caboose.   The conductor, who was in the latter, said the whistle was blown and bell rung as the locomotive approached the crossing; that the bell was automatically operated and ringing for more than a mile before the scene of the accident was reached and continued to ring after it happened and after the engine stopped; he also testified the headlight was shining.   Erdman, also in the caboose, heard the ringing of the bell, the blowing of the whistle and saw the headlight.   He and other witnesses

said it could be seen for two or three miles. The engineer testified he blew the crossing whistle and started the automatic bell ringing at a junction point more than a mile from the place of collision, that it rang loudly and continuously until the engine stopped after the accident, that the electric headlight was lit, and, although not sure it was turned on to full power, that it threw sufficient light to distinguish objects from 200 to 300 feet in advance of the locomotive and that the rays could be seen at a distance of at least five miles. Another witness, Begal, was in the caboose. He said the whistle was blown, the bell ringing from the point named by the other persons until the engine had stopped and that the headlight was burning, that it could be seen for several miles. Heilman, also in the caboose, heard the crossing whistle blown, the bell ringing over the distance specified by the engineer and until after the accident; he too said the headlight was lit. Jones, the fireman, said the crossing whistle was blown, the bell rung for the distance fixed by the other witnesses, that it was automatically operated and rang until after the accident and that the headlight was burning. He saw the team as the locomotive approached the crossing, when the engine was about 70 feet away. The horse was on the west track when he first observed it, on a trot; realizing the danger, he called to the engineer, who instantly applied the emergency brake. He averred that the train ran only six and one-half rail lengths beyond the crossing, which was shown to be about 250 feet. He further said that from the time he first observed the approaching team on the other track, it was moving at a trot and did not stop. In the light of this positive testimony, it could not be permitted that evidence as to whether warning was given so absolutely negative as that of the single witness produced by the plaintiff should prevail. Craft v. Hines, Director General, 272 Pa. 499, is a case where there was much more evidence of the absence of a warning than in the case at hand; there we said: "The testimony of all

three of them was negative,—that they did not hear,—
and not one of them supplied the element of watchful-
ness and attention for a signal, necessary to meet de-
fendant's positive proofs in this regard......Against
this negative and unsatisfying testimony, defendant pro-
duced evidence to show, by the engineer of the train, that
he gave notice of the approach to the crossing by blowing
the customary crossing-approach signal;......that the
engine was provided with an automatic bell-ringing
device, which he turned on when he blew the whistle;
that the bell commenced ringing and rang until after the
train passed the crossing.  The fireman, in corroboration
of the engineer, as to the blowing of the whistle and ring-
ing of the bell, testified that he shut the bell off, after the
train stopped, following the accident, that he heard it
ringing all the time,......The conductor also testified
the bell continued to ring after the train had stopped,
and this fact was further corroborated by a witness who
was driving an automobile in the road behind the truck
in which deceased was riding, who likewise testified that
the bell continued to ring after the train stopped."
Three other witnesses testified as to the whistle and the
bell.  Summing up this evidence, we said: "In the light
of this positive testimony produced by the defendant,
no verdict could be permitted to stand in plaintiff's
favor, which was based on the negative and unsatisfac-
tory evidence produced in her behalf, to establish negli-
gence by a failure to give notice of the approach of the
train: Anspach v. Phila. & Reading Ry. Co., 225 Pa.
528; Charles v. Lehigh Valley R. R. Co., 245 Pa. 496;
Leader v. Northern Central Ry. Co., 246 Pa. 452; Rapp
v. Central Railroad of Penna., 269 Pa. 266." In Keiser
v. Lehigh Valley R. R. Co., 212 Pa. 409, nine witnesses
averred that they did not hear the bell ring nor the whistle
blow.  We said: "The testimony of all of these witnesses
was negative in character, and cannot prevail against
the positive and conclusive testimony of the appellee,
which clearly showed these duties to have been per-

formed"; and in Knox v. Phila. & Reading Ry. Co., 202
Pa. 504, we determined the testimony of one witness
that a train approached a crossing without ringing a
bell or sounding a whistle, contradicted by the engineer,
fireman, conductor and brakeman was insufficient to
carry the case to the jury on the question of the railroad
company's negligence.  Our conclusion must be that
plaintiff was not entitled to go to the jury on the alle-
gation of no warning given.

What has been written on the subject of warning is
applicable to the second ground of negligence alleged,
the speed of the locomotive.  There was no sufficient evi-
dence on plaintiff's behalf as to what it was, while that
for defendant, by above witnesses who testified as to the
warning, showed it to have been from 18 to 20 miles an
hour.  The engine ran about 250 feet beyond the crossing
and the conductor, engineer and fireman said this was
the shortest space in which such a locomotive drawing a
caboose, operating at the speed named, could be halted.
The witness, Schell, had only a fleeting glimpse of the
engine as it came within his line of vision looking down
the street toward the crossing.  He did not notice it be-
fore the crash and all that he did see is thus summed up
in his testimony, "It was just a streak of lightning, a
light, and then I heard the crash."  He explained by this
he meant it had passed as quick as lightning.  He esti-
mated the locomotive was running at from 32 to 35 miles
an hour.  In addition, he said he did not see the engine
until after it stopped, that he just heard the crash, and
could not tell how fast it was traveling but estimated the
rapidity from the crash.  It is manifest no correct con-
clusion as to speed could be based upon this testimony.
In Craft v. Hines, 272 Pa. 499, where the opportunities
for observation were certainly as good if not better than
they were here, we said: "Nothing as to the rate of speed
of the train could safely be predicated on what was said
by plaintiff's witnesses; they had not observed its ap-
proach,......and saw it only for the most fleeting space

of time." Appellant was, therefore, not entitled to go to the jury on this question, as she had not shown by any trustworthy evidence what the rate of movement was, whereas defendant, by witnesses qualified to speak, proved a nonnegligent speed.

This brings us to the third ground of negligence alleged—that the safety gates were not lowered to warn deceased against the approaching train; coupled with this is plaintiff's further proposition that the presumption is deceased did his duty by stopping, looking and listening, and, if he did, and was misled into proceeding by the open gates, the fault was not his but the defendant's in not having them closed. Even though the gates were up, it was still deceased's duty to observe the precautions the law required of him. While no witness saw him until he was on the first of the two tracks, at that time his horse was trotting. If the presumption be accorded that he did stop, look and listen, then pausing 80 feet from the tracks he could see for 1,367 feet along them; if he stopped at a point 12 feet from the first track, his view was extended to 1,609 feet. At either of the points named, had he stopped, looked and listened, he could not have failed to see or hear the on-coming engine, with headlight lit observable for miles, which had sounded a whistle for the crossing and whose bell was giving warning of its approach. When crossing the first track, had he looked and listened, he was bound to see and hear the advancing locomotive, as his view then was for 1,609 feet and it necessarily was only a short distance from him, certainly not more than 100 feet.

The doctrine that a person losing his life must be presumed to have exercised due care has no application where the evidence shows affirmatively the circumstances of the accident to the contrary. There can be no presumption as against facts which are clearly proven: Bernstein v. Penna. R. R. Co., 252 Pa. 581; Gordon v. Director General of Railroads, 268 Pa. 497. In Miller v. Penna. R. R. Co., 256 Pa. 142, as here, there was no wit-

ness who testified whether the man and wife, the victims
of a grade crossing accident, stopped, looked and listened
before attempting to cross the railroad. In that case, it
was dark and the headlight of the locomotive was an or-
dinary oil lamp. It was shown there was a view of the
train, as the track was approached, for a distance of from
800 to more than 1,000 feet. The train was a fast ex-
press, behind time, going at a speed, as testified to by
plaintiff's witnesses, of a mile a minute. The question
whether warning was given of its approach was in dis-
pute. After adverting to the presumption of the per-
formance of duty by the deceased, we said, speaking
through Mr. Justice FRAZER: "This presumption may
be rebutted by evidence showing he in fact failed
to observe that duty . . . . . . . Deceased was familiar
with the locality [as was the deceased in the case
at bar] and the distance which he could see along
the track was variously given as from 787 to 1,040 feet.
. . . . . . Under these circumstances the only reasonable
inference is that if decedent had taken proper precau-
tions before attempting to cross, and had stopped to
look and listen, he could not have failed to observe the
approaching train." In Reigner v. Penna. R. R. Co., 258
Pa. 257, it was held the presumption that one who is
run down and killed by an express train on a railroad
track did all that prudence for his safety would suggest
before entering upon the track, and that he stopped,
looked and listened, like every other presumption gives
way to admitted facts with which it is irreconcilable,
and, speaking through Mr. Justice WALLING, in Moses v.
Northwestern Penna. Ry. Co., 258 Pa. 537, at page 540,
we said: "The law presumes that one about to cross a
railroad track performs his duty, but that presumption
is rebutted where a man walks or drives upon the track
and is immediately struck by a locomotive or car that
was in full view when it became his duty to look." In
Kemmler v. Penna. Co., 265 Pa. 212, we decided that no
damages could be recovered for the death of a pedestrian,

killed at a grade crossing at night, no one having seen the accident, where it was shown deceased was familiar with the crossing, that the train was running backward, tender in front on which were two lights, that the bell rang continually and automatically and the whistle was blown, and that at the distance of 40 feet from the track there was a view along it for over 300 feet which increased as one approached the rails to 2,000 feet at 15 feet therefrom. Most pertinent to the disposition of the case in hand was the language used in that opinion: "The evidence as to physical conditions at the point of the accident also leads to the conclusion that deceased contributed to his injury by negligence on his part. While it is true the law presumes he performed the duty required of him to stop, look and listen, no sufficient excuse appears for his failure to observe the slowly approaching train of which he had ample view. He was familiar with the crossing and had apparently been in the habit of passing over it daily in going to and returning from his work. The speed of the train was probably more than two or three times greater than his own when walking and the engine necessarily must have been practically at the crossing when he reached it. A man cannot be heard to say he looked and listened if in spite of what must have been obvious he walks directly in front of an approaching train: Carrol v. Ry., 12 W. N. C. 348; Miller v. Ry., 257 Pa. 517. Manifestly deceased either did not look and observe the approaching train, or having seen it attempted to cross ahead of it. In either case he was guilty of negligence sufficient to prevent recovery." Concluding our review of this feature of the case, we repeat what was recently said in Hazlett v. Director General of Railroads, 274 Pa. 433, 436: "Moreover, such presumption is here rebutted by the fact that the deceased drove directly in front of the near approaching train, which was in full view from the place where it was his duty to stop. It is vain to say the traveler stopped, looked and listened if, in spite of what his eyes and ears

must have told him, he walked or drove right in front of an approaching train and was immediately struck."

The circumstance that the gates were not lowered is not alone sufficient to warrant recovery, where, as in the pending case, it is shown that, had the deceased performed his duty, he must have seen the approaching locomotive: Greenwood v. Phila., W. & B. R. R. Co., 124 Pa. 572; Earle v. Phila. & Reading Ry. Co., 248 Pa. 193. In all our cases to which attention has been called or which our own research has developed, where the factor of safety gates entered into a recovery, there was some other element than the mere failure to have the gates lowered which excused proceeding across the track without full observation of caution. In the most recent one, Johnson v. Director General, 278 Pa. 491, when the plaintiff approached the gates they were down. He stopped, looked and listened and while waiting they were raised and a voice from the tower said "Go ahead." We thus commented on the facts: "Although plaintiff was not thereby relieved from the duty to observe reasonable care, the opening of the gates constituted an intimation that the tracks were free of approaching trains and implied an invitation to plaintiff to proceed......His [the watchman's] position in the tower afforded him a better opportunity for observation than was afforded the traveler on the highway. The latter, consequently, had the right to assume no immediate danger existed and accept the invitation to cross impliedly extended by raising the gates and expressly extended by the watchman." When the plaintiff in that case came to the crossing, had he found the gates up an entirely different situation would have presented itself. In Siever v. P., C., C. & St. L. Ry. Co., 252 Pa. 1, the gates were down when the trolley car which the plaintiff was operating approached them and stopped; speaking through the present Chief Justice, we used this language: "We have repeatedly said that while open safety gates do not relieve one about to cross a railroad from the duty of exercising due care, yet

*the lifting* of the gates is an intimation that no train is approaching and an invitation to make the crossing." What was determined in Roland v. Phila. & Reading Ry. Co., 224 Pa. 630, cannot be held to alter the rule that open gates without more is not sufficient to excuse a failure to observe the precautions the law requires on the part of one desiring to cross a railroad.  There the verdict was in plaintiff's favor and defendant appealed. The judgment was reversed because the negligence of the defendant was taken from the jury, the court in its charge having declared as a matter of law, because the gates were up, the defendant was negligent.  In Messinger v. Penna. R. R. Co., 215 Pa. 497, while there was present the element of open safety gates, it was pointed out in the opinion (p. 500), that there had been a due observance of caution, plaintiff "having been invited by the raised gates to cross over, *and there being testimony tending to show that appellee exercised proper care in approaching the crossing,......and having testified that he continued to use care while on the crossing,* it was clearly a case for the jury."  In the instant case, it is manifest the deceased could not have exercised proper caution in approaching the tracks and that he did not use care while on the first of them.  We can, with certainty of the appositeness of the language, quote what was said in Kipp v. Central R. R. Co. of N. J., 265 Pa. 20, 24: "The statement [in the pending case, the presumption] that he looked and listened when upon the first track and neither heard nor saw the on-coming train is incredible......Nor did the fact that, when he entered upon the crossing, the safety gates were not lowered, relieve him from the duty of exercising the care required under the circumstances......He has no right to omit the ordinary precautions when approaching a railroad crossing merely because he finds the gates up"; also this language from Schofield v. Director General of Railroads, 276 Pa. 508, 510: "Furthermore, the failure

to stop, look and listen was not excused by the fact that the crossing gates were up."

The assignments of error are overruled and the judgment is affirmed.

CONCURRING OPINION BY MR. JUSTICE SIMPSON:

In my judgment the majority opinion satisfactorily establishes the fact that plaintiff did not produce sufficient evidence to carry the burden of proving defendant's negligence, and hence the judgment should be affirmed on this ground. But I wholly dissent from that opinion in so far as it finds, as a matter of law, that plaintiff's husband was guilty of contributory negligence. His death, and consequent inability to testify regarding his conduct at the time of the accident, raises a presumption that he exercised due care; and, presumptively, therefore, (1) he stopped, looked and listened before he proceeded to cross the tracks; (2) the place he stopped was a proper one; and (3) at that time he could neither see nor hear anything which would lead a prudent man to believe a train was approaching the crossing. Testimony that if the track was clear he could have seen the approaching train when it was 1,609 feet away, does not, as a matter of law, overcome the presumption, because (1) this is an affirmative defense, the burden of proving it being on defendant; and (2) the only evidence to that effect being oral, and produced by defendant, was for the jury's consideration.