# Sharpless *v.* Delaware, Lack. & West. R. R., Appellant.

*Negligence—Railroads—Automobiles— Crossing — Collision —*
*"Stop, look and listen"—Case for jury—Contributory negligence—*
*Safety gates—Evidence—Not negative—Signals.*

1. Every traveler on a highway in approaching a railroad grade crossing has a right to rely, to some extent, on the safety gates which the railroad company has provided at the crossing, and, if he stops at a proper place, he can rest in the assurance that if a train is approaching, the gates will be closed, and if they are not, that it is safe to proceed.

2. Opened gates constitute an invitation to cross which is to be considered by the jury in determining whether the person crossing the tracks exercised proper care under the circumstances.

3. A traveler who, on approaching safety gates, finds them open performs his full duty by stopping, looking and listening at a proper place and need not alight from his vehicle and go forward to further observe.

4. A traveler who has stopped within the space enclosed by the safety gates is not guilty of contributory negligence, if it appears that the gates were not lowered until after the accident, and the traveler's action had not in any way interfered with the lowering of the gates.

5. Where, in a collision case for death at a railroad grade crossing, the evidence as to whether signals were given by the approaching train is conflicting, the evidence of plaintiff's witnesses that no signals were given cannot be considered purely negative, where it appears that the witnesses were in such a position with reference to the railroad that they must have heard the signals if they had been sounded.

Argued April 13, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 181, Jan. T., 1926, by defendant, from judgment of C. P. Columbia Co., Dec. T., 1923, No. 118, on verdict for plaintiff, in case of Carrie R. Sharpless v. Delaware, Lackawanna & Western Railroad Co. Affirmed.

440 SHARPLESS *v.* D., L. & W. R. R. CO., Appellant.

Trespass for death of plaintiff's husband. Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $35,000 on which judgment was entered for $17,500. Defendant appealed.

*Error assigned* was, inter alia, refusal of defendant's motion for judgment n. o. v., quoting record.

*W. A. Valentine,* with him *Daniel R. Reese, Gomer W. Morgan* and *Alex. C. Jackson,* for appellant.—Plaintiff's evidence as to the alleged negligence of the employees of the train which caused the accident amounted at most to a scintilla which was insufficient to warrant the submission of the case to the jury as against the positive, uncontradicted and disinterested testimony of the eleven witnesses produced by defendant: Rapp v. R. R., 269 Pa. 266; Keiser v. R. R., 212 Pa. 409; Knox v. Ry., 202 Pa. 504; Cubitt v. R. R., 278 Pa. 366; Craft v. Director General, 272 Pa. 499; Zotter v. R. R., 280 Pa. 14; Rottmund v. R. R., 225 Pa. 410; Simons v. R. R., 254 Pa. 507; Razzis v. R. R., 273 Pa. 550; Allen v. R. R., 274 Pa. 518; Hoffman v. R. R., 278 Pa. 246.

Plaintiff's decedent was guilty of contributory negligence: Kinter v. R. R., 204 Pa. 497; Bistider v. R. R., 224 Pa. 615; Follmer v. R. R., 246 Pa. 367; Kipp v. R. R., 265 Pa. 20; Siever v. Ry., 252 Pa. 1; Razzis v. R. R., 273 Pa. 550; Messinger v. R. R., 215 Pa. 497.

The atmospheric condition did not relieve Sharpless of the duty of going ahead and looking for an approaching train: Gordon v. Director General, 268 Pa. 497; Peoples v. R. R., 251 Pa. 275.

*R. S. Hemingway,* with him *R. R. John,* for appellee. —The testimony of plaintiff's witnesses as to the absence of sufficient signals was distinctly positive, not negative testimony: Rottmund v. R. R., 225 Pa. 410;

Simons v. Ry., 254 Pa. 507; Cubitt v. R. R., 278 Pa. 366.

Under the circumstances of this case plaintiff's husband stopped at the usual and proper place: Barthelmas v. Ry., 225 Pa. 597.

The court should not declare, as a matter of law, that plaintiff's husband should have alighted from his automobile and gone forward: Barthelmas v. Ry., 225 Pa. 597; Siever v. Ry., 252 Pa. 1; Razzis v. Ry., 273 Pa. 550; Hanna v. R. R., 213 Pa. 157; Messinger v. R. R., 215 Pa. 497; Hoffman v. R. R., 278 Pa. 246.

Plaintiff's husband was not guilty of contributory negligence as a matter of law: Miller v. R. R., 67 Pa. Superior Ct. 249; Johnson v. Director General, 278 Pa. 491; Bard v. Ry., 199 Pa. 94.

OPINION BY MR. JUSTICE SCHAFFER, May 26, 1926:

Defendant contends on this appeal from a judgment which represents the damages recovered by plaintiff for the death of her husband in a grade crossing accident that, notwithstanding the verdict, we should direct judgment in its behalf. A study of the record and a full consideration of the brief and the oral argument of appellant's able counsel have not convinced us that the result reached in the court below should be disturbed.

Plaintiff's husband on the morning of November 8, 1922, drove his automobile along East Street in the town of Bloomsburg. The street which is greatly traveled is crossed by defendant's railroad at grade. The crossing is protected by safety gates. As deceased approached the crossing, the gates were not lowered, although the operator whose duty it was to put them down was at his post in the tower about twenty feet above the tracks, from which they were controlled. There were two tracks across the highway, a side track and a main one. When deceased reached a point where the front of his car was two or three feet from the side track, which was the one nearer to him, he stopped according to witnesses summoned by plaintiff who were near by

and in position to observe; this was contradicted by some of defendant's witnesses. As deceased started up his automobile and was about to enter on the main track located seven feet seven inches from the side one, a train running rapidly, its speed estimated to be from 30 to 50 miles an hour, gave notice of its approach by the whistle of its engine blown some 75 or 100 feet from the crossing. This notice of the onrushing train must have been heard by deceased for he suddenly and simultaneously therewith steered his car to the left in an endeavor to avoid the collision. He was unsuccessful and was carried by the engine into contact with a freight car on the side track, receiving injuries which produced unconsciousness and from which he died a few hours later.

From the point where he stopped, the view of the deceased in the direction from which the train approached extended along the track on which it was running about 65 feet. If he had alighted from his motor car and walked ahead to the track and then looked, on a clear day he could have seen the track for more than 500 feet. However, it was not a clear day, but a foggy one, particularly on the railroad tracks, which ran between buildings, where, it was testified, the fog was very heavy, so dense, according to the engineer of the train, that he could not and did not see the safety gates were not down until he was within 75 or 100 feet of them, when so observing he sounded a sharp blast on the train's whistle. The fog was so thick that the watchman in the tower above the tracks, who, while not called as a witness because of illness, is presumed to have been doing his duty and on the lookout for the train, which was running behind time, did not attempt to lower the gates, in all probability because he did not hear and could not see it rapidly approaching until practically on the crossing. It is manifest then that, even had deceased alighted from his automobile and gone forward to observe the situation on the main track, he could not have seen along it

a distance of over 100 feet because of the fog, but under the situation existing we are of opinion it was not the duty of deceased to alight from his car and go forward to observe the track to see whether a train was approaching. Here we have a much traveled asphaltum paved highway in a populous town with the railroad grade crossing thereon protected by safety gates. Every traveler on the highway had the right to rely to some extent on this safeguard which the railroad company had provided and, having stopped as this unfortunate man did, could rest in the assurance that if a train was approaching, the gates would be lowered and, if they were not, that it was safe to proceed. If the rule were to be laid down that at such a crossing as this, with the gates up, every traveler by automobile or other conveyance must alight after stopping and go ahead on foot to observe the tracks, danger would be increased instead of diminished. In times when there was much traffic at the crossing, if one, then all must alight from their cars just before reaching the first track. While they were doing so, all traffic would be halted and with trains proceeding as rapidly as this one was, there would be no assurance that when they got back in and started their automobiles forward they would be safe. We have recognized that while raised safety gates do not obviate certain precautions on the part of those approaching a crossing, such as stopping (Earle v. Phila. & Reading Ry. Co., 248 Pa. 193), or other precautions (Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14), yet they do constitute an invitation to cross which is to be considered by the jury in determining whether the person crossing the tracks exercised proper care according to the circumstances (Roberts v. Delaware & Hudson Canal Co., 177 Pa. 185; McCarthy v. Phila. & Reading Ry. Co., 211 Pa. 193; Messinger v. Penna. R. R. Co., 215 Pa. 497; Barthelmas v. Lake Shore & Michigan Southern Ry. Co., 225 Pa. 597; Siever v. Pittsburgh, etc., Ry. Co., 252 Pa. 1; Johnson v. Director General of Railroads, 278 Pa. 491;

L. R. A. 1916 E, page 821); and in this day of great density of traffic where main highways crossed by railroads at grade are protected with safety gates, the traveler who approaching them finds them raised performs his full duty by stopping, looking and listening, and need not alight from his car and go forward to further observe. In this connection, appellant's position that the deceased was guilty of contributory negligence in stopping within the space enclosed by the safety gates cannot be sustained. Had he so stopped that he actually interfered with the lowering of the gates, then there might be a question as to his negligence in so doing, but there was no attempt to lower them until the collision between the train and automobile was actually taking place.

Appellant contends that adequate signals by whistle and bell were given for the crossing. There can be no question that a blast of the whistle was given when the engine was within 75 to 100 feet of the crossing; substantially all the witnesses on both sides so say. It is recognized by appellant's counsel that this signal was not a sufficient warning, but they contend that, prior to it, adequate approach signals were given, and they called witnesses who so testified. Other persons speaking in appellee's behalf said that no prior danger signals were given. Appellant urges upon us that this testimony was negative under such cases as Rapp v. Central R. R. of Pa., 269 Pa. 266; Keiser v. Lehigh Valley R. R. Co., 212 Pa. 409; Craft v. Hines, Director General, 272 Pa. 499; Cubitt v. New York Central R. R. Co., 278 Pa. 366; Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14, but we do not so regard it. The witnesses who declared the whistle was not blown for the crossing until the blast 75 or 100 feet therefrom were not of a class who simply did not hear it, but they were in such position with reference to the railroad that they must have heard had the whistle sounded; indeed, some at least of them were expecting the train and would therefore have been con-

scious of its approach had it been heralded. Three of the witnesses were in front of a building on East Street, on which the accident occurred, a few feet only from the main track of the railroad. One of them said they were expecting the train and another that he knew the train was late. The latter said if it had whistled, they could not have helped hearing it and the third that he heard the toot just before it came to the crossing and that this was the only warning given. This was not negative testimony: Simons v. Phila. & Reading Ry. Co., 254 Pa. 507; Cubitt v. New York Central R. R. Co., 278 Pa. 366.

The vital question in the case is whether and where the engineer gave a signal prior to the one when he was close to the crossing. It is significant that there was a conflict in the testimony of the train crew as to just where the whistle was blown. The express messenger on the train, moreover, heard only one whistle sounded for the crossing and the fireman did not know whether the bell was ringing or not.

As the case presents itself to our minds, it was one for a jury to decide and not for the court's determination.

The judgment is affirmed.