Rosenfield v. Lehigh Valley Railroad Co., Appellant.

Argued December 13, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward J. Fox, Jr.,* of *Fox and Fox,* for appellant.

*Asher Seip,* for appellee.

Opinion by Trexler, P. J., July 13, 1934:

The plaintiff brought suit against the defendant railroad company to recover damages for the death of his wife and for injuries to his automobile. The accident occurred on June 17, 1930, about two o'clock in the morning. The plaintiff's wife was riding in his car driven by his chauffeur. They proceeded from Northampton and at a grade crossing the automobile was struck by a freight train going west. Both of the occupants were instantly killed.

The view toward the direction from which the train came is long and unobstructed. There were street lights at the crossing. To the right of the parties in the automobile as they were about to cross the tracks, there is a raised watchman's tower from which the two safety gates, one on each side of six tracks, are raised and lowered. There is an interval, between the gate near where the accident occurred and the nearest rail, of ten feet. The weather at the time of the accident was clear.

A witness for the plaintiff testified that he was in an automobile approaching the series of tracks from the opposite direction from that from which the parties in plaintiff's automobile were, that he stopped, looked across the tracks and saw the automobile that was struck coming toward the other side of the series of tracks. He saw a train was coming. The other car came up, stopped a minute or two, the gate was open and the gateman in the tower motioned with his hand to the other car (the plaintiff's) and the minute he motioned for plaintiff's chauffeur to go, "he came up." The watchman waved with his left hand. The on-coming automobile was near the tracks. After the gateman waved to him, the driver started to go and the train came along and hit the car.

The verdict fixed the fact that the plaintiff stopped before going on the track. The towerman denied having waved his hand, but said he called to them, "go away, a train is coming," or something to that effect and he further testified that if the chauffeur had not stopped his car, he would have had time to go safely across. There was no proof of excessive speed of the train, nor was there any doubt that the bell was rung and the whistle blown. We must take it for granted, after the verdict in plaintiff's favor, that the gates were up and that the towerman gave the signal to come on.

The only assignment of error is to the refusal of the court to enter judgment in favor of the defendant n. o. v.

In the language of the learned trial judge: "The whole controversy narrows down to whether the jury believed the plaintiff's contention that the gates were up, and that the towerman gave the signal, directing the decedent and her chauffeur to go over the tracks. It may be conceded under the authorities cited by the learned counsel for the defendant, that plaintiff could not recover if it had not been for the raised gates, and the signal to come on. The decedent and her chauffeur would have been guilty of contributory negligence where the physical conditions were as they were in this case, and where there was an unobstructed view of the track upon which the train was, for the distance testified to by the witnesses, and where there was the uncontradicted testimony as to the ringing of the bell and the sounding of the whistle."

The fact that the gates were raised did not relieve the driver of plaintiff's automobile from exercising reasonable care under the circumstances. The jury could find that the plaintiff's chauffeur had stopped, looked and listened, and performed every duty in regard to his *approach* to the tracks. The appellant argues that when he reached the track, it was imperative on his part to stop and having stopped, he saw, or must have seen, had he looked, the approaching train and must have heard the alarm given.

The question then arises whether under the facts in the case, it became the duty of the court as a matter of law to rule that the action on the part of the plaintiff's chauffeur was negligence per se. In Hamilton v. Phila. B. & W. R. R. Co., 252 Pa. 615, 97 A. 850, in which there was an invitation to cross, the court said, "Just here is where the alleged action of the crossing tender operates to reduce a case of negligence per se

to a question of negligence in fact. That is to say, if the traveler is invited to cross it may lure him into a less rigid exercise of the duty of continuous looking and listening: Ayers v. Pittsburgh, Cin., Chicago & St. Louis Ry. Co., 201 Pa. 124, 50 A. 958; McCarthy v. Philadelphia & Reading Ry. Co., 211 Pa. 193, 60 A. 778. The evidence as to the action of the crossing tender was referred to the jury to be considered in its bearing upon the driver's contributory negligence, as well as upon the question of the defendant's negligence." (Opinion of lower court affirmed per curiam.)

In Gerg v. Penna. R. R. Co., 254 Pa. 316, 98 A. 953, a boy on a bicycle was about to cross and the watchman gave the signal. The Supreme Court affirmed the instructions given by the lower court which were as follows: "The watchman's duty there was either to warn people not to cross or to signal them to cross; and if the watchman went out and made a signal to cross, as he admits he did, that was an invitation to everybody who was present within a reasonable distance waiting or desiring to cross the track."

In Johnson v. Director General of Railroads, 278 Pa. 491, 123 A. 484, Justice FRAZER, now the Chief Justice, took occasion to use the following language: "We also have the further circumstance that the safety gates which were down at the time plaintiff approached the tracks, were raised while his truck was stopped and he invited to cross. Although plaintiff was not thereby relieved from the duty to observe reasonable care, the opening of the gates constituted an intimation that the tracks were free of approaching trains and implied an invitation to plaintiff to proceed. While he was bound to use reasonable precaution for his safety in passing over the tracks, the raising of the gates was a fact for consideration of the jury in determining whether he exercised proper care under the circumstances: Messinger v. R. R., 215 Pa.

497, 64 A. 682; Guthrie v. R. R., 222 Pa. 366, 71 A. 542. It was the duty of the watchman to know conditions at the crossing and the probable time of arrival of trains, and, further, his position in the tower afforded him a better opportunity for observation than was offered the traveler on the highway. The latter, consequently, had the right to assume no immediate danger existed and accept the invitation to cross impliedly extended by raising the gates and expressly extended by the watchman; at the same time, however, performing his duty to take reasonable precaution for his safety.''

In Sharpless v. D. L. & W. R. R., 286 Pa. 439, 133 A. 636, when the safety gates were up, it was argued that the traveler should alight from his car and go forward to further observe, but it was held that that was not necessary. Copious reference is made to cases bearing upon the subject we are discussing. A very late case is that of Brown v. Reading Company, 310 Pa. 516, 165 A. 856.

None of these cases are exactly alike, as to all the facts, to the present and the learned counsel for the appellant points out what he contends shows the difference. We gather, however, that the cases above referred to and the others cited in them, sustain the conclusion that where the safety gates are up, and the watchman beckons to an approaching driver giving him thereby the assurance that he may safely cross, the matter of his contributory negligence is ordinarily for the jury. There are cases where there is a failure to stop, look and listen, when the court may pass upon the question as a matter of law, and there may be other cases, when the uncontroverted facts might require such action, but we do not think the present is one of them.

The judgment is affirmed.

**430**

DISSENTING OPINION BY KELLER, J., July 13, 1934:

I would reverse, and enter judgment non obstante veredicto for the defendant. The uncontradicted evidence for the *plaintiff* is that his driver stopped before entering on the railroad track and that at that time the oncoming train was in full view and plainly visible, and was ringing the bell and blowing the whistle. None of the Supreme Court cases cited in the majority opinion, or relied on by the court below, go to the length of holding that, in such circumstances, the mere fact that the gateman or towerman beckoned him to proceed justified his entering on the tracks immediately in front of an oncoming train, in full view and so close that it struck him as soon as he reached the track. The beckoning of the towerman, while it might have excused a "less rigid exercise of the duty of continuous looking and listening," did not justify his disregarding what he must have seen and heard, or excuse his attempting to cross the track immediately in front of a train which he saw bearing down upon him to his imminent danger.